CRAIG R.,

                              Plaintiff,

   -against-                                                   6:18-CV-0630 (LEK)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                              Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On May 30, 2018, Plaintiff Craig R. filed an action in this Court under the Social Security Act. Dkt. No. 1 ("Complaint"). He seeks review of the determination of the Commissioner of Social Security that he was not disabled during the period December 10, 2014 through the date of the Administrative Law Judge's ("ALJ's") decision, March 1, 2017 (the "relevant period"). Compl.; see also Dkt. Nos. 9 ("Record"); 10 ("Plaintiff's Brief"); 11 ("Defendant's Brief"). For the reasons that follow, the Commissioner's determination of no disability is vacated, and the matter is remanded for further proceedings.

**II.    LEGAL STANDARD**

    **A.  Standard of Review**

When a district court reviews an ALJ's decision, it must determine whether the ALJ applied the correct legal standards and whether his or her decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision maker's conclusion. Halloran v. Barnhart,

362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court will defer to the ALJ's decision if it is supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). However, a court should not uphold the ALJ's decision—even when there is substantial evidence to support it—if it is based on legal error. Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

**B. Standard for Benefits**

According to Social Security Administration ("SSA") regulations, a disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). An individual seeking disability benefits "need not be completely helpless or unable to function." De Leon v. Sec'y of Health and Human Servs., 734 F.2d 930, 935 (2d Cir. 1984). In order to receive disability benefits, a claimant must satisfy the requirements of a five-step evaluation process. 20 C.F.R. § 404.1520(a)(1). If the ALJ is able to determine that the claimant is disabled or not disabled at any step, the evaluation ends. § 404.1520(a)(4). Otherwise, the ALJ will proceed to the next step. Id.

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful work activity." § 404.1520(a)(4)(I). If so, the claimant is not disabled under SSA regulations. Id. At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe," i.e., that "significantly limits" the claimant's

"physical or mental ability to do basic work activities." §§ 404.1520(a)(4)(ii), 416.920(c). If the claimant does not have such an impairment, the claimant is not disabled under SSA standards. Id. At step three, the ALJ asks whether the claimant's medically determinable physical or mental impairment(s) are as severe as an impairment of the requisite duration listed in Appendix 1 of Subpart P of § 404. § 404.1520(a)(4)(iii); 20 C.F.R., Pt. 404, Subpt. P, App. 1. If the claimant's impairment(s) are as severe then the claimant is disabled. § 404.1520(a)(4)(iii). If not, the ALJ moves on to step four and reviews the claimant's residual functioning capacity ("RFC") and past work. § 404.1520(a)(4)(iv). A claimant is not disabled under SSA standards if he can perform past work. Id. If the claimant cannot perform his past work, the ALJ decides at step five whether adjustments can be made to allow the claimant to work somewhere in a different capacity. § 404.1520(a)(4)(v). If the claimant "cannot make an adjustment to other work," then the claimant is disabled under SSA standards. Id. In the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the SSA. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

### III. BACKGROUND

#### A. The Disability Allegations and Opinion Evidence at Issue

Plaintiff is a forty-nine-year-old man with a "limited education." R. at 24, 125. He has the past work of a mason helper, a construction worker, and a maintenance worker. Id. at 24. Plaintiff seeks a finding of disability due to back injury, knee injury, depression, shoulder injury, and carpal tunnel syndrome. Id. at 125.

### 1. *Plaintiff's Testimony*

Plaintiff testified his back has gone "downhill"since he injured it while constructing a retaining wall. R. at 41–42.[1] After suffering this injury, Plaintiff had neck surgery, and he anticipates requiring back surgery. Id. at 42. Plaintiff further testified that he retains persistent pain in the back of his neck even though the surgery helped resolve daily headaches. Id. at 42–43. He reported that his neck pain still contributes to headaches that he has "twice a week." Id. at 50. Plaintiff testified that his neck pain also travels "right from the base of [his] skull right down to his tailbone, and then it goes into my sciatic nerve, and then . . . right down my legs." Id. Plaintiff further reported that he suffers tingling that spreads to his feet and causes numbness. Id. at 52. He testified that he also gets cramps and numbness in his hands and fingers. Id. at 51. Plaintiff testified he additionally suffered a torn ACL in his left knee "from carrying heavy wood," for which he had surgery. Id. at 43. Plaintiff testified he has not had surgery on his right knee. Id. He further testified that at one point he attempted to work at an antique shop where he was "pulling weeds around the building, painting, [and] changing light bulbs," but he had to quit after just two days because "it got to the point where [his] back was aching" and he "just couldn't do no more." Id. at 48–49. Plaintiff testified he has had "carpal tunnel surgeries on both hands," but that only improved his pain "for a very short time." Id. at 51. Plaintiff reported that his hands "ache really bad" because they "cramp up," "go to sleep," and "tingle." Id. Plaintiff further reported that "[s]ome nights, [he] can't sleep because of" the pain in his hands and that he has difficulty

---

[1] Although Plaintiff did not testify to injuring his back in 2002, the Court has determined the injury occurred that year upon reviewing the remainder of the record. See id. at 16, 41, 328, 637.

holding a pencil. Id. Plaintiff testified that sitting is painful because he has pain from his "back" to the "cheek of [his] butt." Id. at 53–54. He reported that he can sit "[a]bout a half hour" before ne needs to stand up and that he can stand "[p]robably 15, 20 minutes" before he needs to sit down. Id. at 54. Plaintiff testified that he can lift "[p]robably 10, 15 pounds" without hurting himself. Id. He further testified that Trazodone, an antidepressant, causes him to "sleep to where [he doesn't] even want to get up" and "messes with [his] thyroid." Id. at 52.

    *2. Dr. Aranda*

Since July 9, 2012, Dr. Christina Aranda has treated Plaintiff every three to six months for chronic neck pain, back pain, and depression. R. at 52. On August 24, 2015, Dr. Aranda prepared a medical source statement. See id. at 1042–46. Dr. Aranda noted that, even after surgery, Plaintiff has a lot of pain and "good and bad days." Id. at 1046. She also noted Plaintiff's medications make him drowsy, dizzy, and constipated (though they relieve some of his pain). Id. at 1042. Furthermore, she opined that Plaintiff can sit for just thirty minutes at a time and stand or walk for just thirty minutes at a time. Id. at 1044. She also found that Plaintiff can only sit for a total of two hours in an eight-hour workday and stand or walk no more than two hours in an eight-hour workday. Id. at 1043. Dr. Aranda opined that Plaintiff will need to take unscheduled breaks during an eight-hour workday every thirty minutes for ten to fifteen minutes each. Id. She found that Plaintiff can occasionally lift less than ten pounds and can rarely lift ten pounds. Id. Dr. Aranda further opined that Plaintiff can never twist, stoop, bend, crouch, squat, climb ladders, look down or up, or rotate his head right or left. Id. She found that Plaintiff can rarely climb stairs, hold his head in a static position, use his hands to grasp, turn, or twist objects, use his fingers for fine manipulation, and use his arms to reach, including overhead. Id. Dr. Aranda

5

concluded that, given Plaintiff's overall impairments and work-related limitations, he will remain off task more than twenty percent of an eight-hour workday and will be absent from work more than four days per month. Id. at 1044.

### 3. Dr. Figueroa

Dr. Rita Figueroa, a consulting examiner, conducted an examination of Plaintiff on April 13, 2015. See R. at 620–24. She found that Plaintiff possesses a "[m]oderate limitation" for activities that require lifting, carrying, repetitive bending, prolonged walking, standing, pushing, and pulling. Id. at 623. Dr. Figueroa also found a "[m]ild limitation for repetitive kneeling and squatting." Id.

### 4. Dr. Buckley

On February 7, 2014, Dr. Rudolph A. Buckley, Plaintiff's treating orthopedist, opined that Plaintiff is "capable only of sedentary type job positions only with no lifting, bending, repetitively." R. at 909. The ALJ found that Dr. Buckley, as Plaintiff's treating orthopedist, "has insight into the limitations that the claimant faces from his cervical spine degenerative disc disease, status-post ACDF [or anterior cervical discectomy and fusion]."

**B. The ALJ's Decision**

On March 1, 2017, ALJ John Murdock issued a decision finding that Plaintiff had not been disabled since December 10, 2014. R. at 26.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 10, 2014, the date on which Plaintiff applied for disability benefits. Id. at 12. Second, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, status-post ACDF, degenerative disc disease of the thoracic and lumbar spine,

6

bilateral carpal tunnel syndrome, status-post bilateral release, left shoulder rotator cuff tear, bilateral degenerative joint disease of the knees, status-post left knee arthroscopy, and depression. Id. at 12–13. Third, the ALJ found that Plaintiff did not have impairment(s) that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (§§ 404.1520(d), 404.125, 404.1526). Id. at 13–15. Fourth, the ALJ found that, during the relevant period, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that the job could:

> never require climbing of ropes, ladders, and scaffolds; can occasionally require other climbing, balancing, stooping, kneeling, crouching, or crawling; never require repetitive looking above the eye level, which requires bending the neck; avoid exposure to hazardous machinery and heights; involve only simple, repetitive tasks and instructions; and should not require unassisted mathematics (that is, math done without the assistance of a cash register or calculator).

Id. at 15. The ALJ considered all of Plaintiff's symptoms and the opinion evidence in assessing his RFC. Id. While the ALJ found Plaintiff unable to perform any past relevant work, id. at 24, he found that Plaintiff could perform work as a "small parts assembler," "cafeteria attendant," or "garment sorter." Id. at 25.

In finding no disability, the ALJ accorded "little weight" to Dr. Aranda's opinion "as it is inconsistent with her treatment records, inconsistent with the record as a whole, and overly restrictive." Id. at 23. The ALJ accorded "great weight" to Dr. Figueroa's opinion because it was "consistent with her examination findings of normal gait and the claimant's ability to walk on his heels and toes, change for the examination, rise from a chair, and get on and off the examination table." Id.

Plaintiff appealed the ALJ's decision, but the SSA's Appeals Council denied review of the decision. Id. at 1–3.

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in two ways: (1) failing to follow the treating physician rule and subordinating the opinion of Dr. Aranda to that of Dr. Figueroa and (2) basing his RFC determination on the vague opinion of Dr. Figueroa. Pl.'s Br. at 12–22.

### A. The ALJ's Treatment of Medical Opinions

Plaintiff claims that the "ALJ's RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of Plaintiff's treating physician, Dr. Aranda." Pl.'s Br. at 13.

The SSA regulations provide that "opinions from [a claimant's] treating sources" are "give[n] more weight" than other sources, and are even given "controlling weight" when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. § 404.1527(c)(2).

"[G]ood reasons" must be given for declining to afford a treating physician's opinion controlling weight. §§ 404.1527(c)(2), 416.927(c)(2); Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993). The Second Circuit Court of Appeals has noted that it "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." Morgan v. Colvin, 592 F. App'x 49, 50 (2d Cir. 2015) (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)). Factors that indicate the weight to be accorded to the treating physician's opinion include: "(i) the frequency of examination and the

8

length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ failed to provide good reasons for giving little weight to Dr. Aranda's opinion. The ALJ stated that he accorded little weight to Dr. Aranda's opinion because it was "inconsistent with her treatment records, inconsistent with the record as a whole, including Plaintiff's own testimony regarding his daily activities, and overly restrictive." R. at 23. It is true that Plaintiff testified that he may be able to lift fifteen pounds. Id. at 54. However, the record does not indicate that Plaintiff, in accordance with the requirements of light work as defined in 20 C.F.R. § 416.967(b), is frequently able to lift objects up to ten pounds, nor does it indicate he can lift objects no more than twenty pounds. And while Plaintiff admitted he has the ability to "cook four times a week," "shop[] twice a month," and provide childcare "every day," id. at 621, the ALJ's "heavy reliance on Plaintiff's reported daily activities of self-care, child-care, and hobbies does not provide a sufficient basis for discounting almost entirely the well-supported expert testimony of licensed [physicians] regarding Plaintiff's ability to sustain a job." Mahon v. Colvin, No. 15-CV-02641, 2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31, 2017) (emphasis in original). Indeed, as another court in this Circuit has observed, a plaintiff's "reports of her daily activities by themselves are not substantial evidence that she was not disabled and are insufficient to justify according [a treating physician's] opinion limited weight," because "a claimant need not be an invalid to be found disabled." Nusraty v. Colvin, 15-CV-2018, 2016 WL 5477588, *12 (E.D.N.Y. Sept. 29, 2016). "[W]hen a disabled person gamely chooses to endure

9

pain in order to pursue important goals[,] . . . it would be a shame to hold this endurance against him." Id. (quoting Balsamo v. Chater, 142 F.3d 75, 81–82 (2d Cir. 1998)).

As for the ALJ's reliance on Dr. Buckley in discounting Dr. Aranda's assessment of Plaintiff's ability to sit, stand, and walk, Dr. Buckley opined that Plaintiff "is capable only of sedentary type job positions only with no lifting, bending, repetitively." R. at 909. Dr. Buckley's opinion is therefore consistent with Dr. Aranda's assessment that Plaintiff has limited ability to sit, stand, and walk.

And as for the ALJ's reliance on Dr. Figueroa in discounting Dr. Aranda's assessment, the ALJ afforded too much weight to Dr. Figueroa's opinion as she is a consultative examiner. "[A] consulting physician's opinions . . . should be given limited weight" because "consultative exams are often brief, are generally performed without the benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990); see also Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); Spielberg v. Barnhart, 367 F. Supp. 2d 276, 283 (E.D.N.Y. 2005) (finding that an ALJ gave too much weight to a single assessment by a consultative physician). "[I]t is presumed that in a conflict of views between a treating doctor and a onetime consultant, the conflict should be resolved in favor of the treating physician." Cabreja v. Colvin, No. 14-CV-4658, 2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015). "This presumption against the opinions of non-treating doctors is rooted in the logic of the treating physician rule, which gives more weight to treating physicians because 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may

bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" Diaz v. Berryhill, No. 17-CV-735, 2018 WL 4462366, at *7 (D. Conn. Sept. 18, 2018) (quoting § 404.1527(c)(2)).

Here, the ALJ erred in affording Dr. Figueroa's opinion great weight, R. at 23, when, based on the record, she appears to have been a consultative doctor who met with Plaintiff only once on April 13, 2015, id. at 620-24. The record, on the other hand, is replete with multiple meetings between Dr. Aranda, Plaintiff's treating physician, and Plaintiff himself regarding the alleged disabilities at issue. See e.g., R. at 484–89, 633–34,1011–14. And there are not "serious errors in the treating physician's opinion" identified by the ALJ that would warrant Dr. Figueroa's opinion "overrul[ing]" that of Dr. Aranda. See Cabreja, 2015 WL 6503824, at *30.

In sum, the ALJ has disregarded the opinion of a treating physician with a relevant lengthy doctor-patient treatment relationship without providing the necessary good reasons to award her views less than controlling weight.

### B. Vagueness of Dr. Figueroa's Opinion

Plaintiff contends the ALJ's RFC determination is "is not supported by substantial evidence because the opinion of Dr. Figueroa is vague and ambiguous." Pl.'s Br. at 20. The Court agrees that Dr. Figueroa's opinion—the only opinion to which the ALJ afforded "great weight"—is unclear. It is not obvious that Dr. Figueroa's opinion represents a valid assessment of whether Plaintiff has the RFC to perform light work. R. at 623. For this reason, the Second Circuit has held that, when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms "moderate" and "mild" absent additional information. Curry v. Apfel, 209

11

F.3d 117, 123 (2d Cir. 2000) (such terms are "so vague as to render [them] useless"); accord Selian, 708 F.3d at 421 (concluding that an ALJ, in determining claimant's RFC, could not rely on the "remarkably vague" opinion of a consulting examiner that the claimant "should be able to lift . . . objects of a mild degree of weight on an intermittent basis") (citing Curry, 209 F.3d at 123–24); Garretto v. Colvin, No. 15 Civ. 8734, 2017 WL 1131906, at *21 (S.D.N.Y. Mar. 27, 2017) ("[The consulting physician's] use of the word 'moderate' is vague and provides no support for the ALJ's conclusion that plaintiff engage in these activities for six hours out of an eight hour day."); Young v. Comm'r of Soc. Sec., No. 13-CV-734, 2014 WL 3107960, at *9 (N.D.N.Y. July 8, 2014) (conclusion by single consulting physician that claimant had undefined "moderate" limitations in sitting not substantial evidence for finding that claimant could perform sedentary work); Richardson v. Astrue, 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) (consulting doctor's vague conclusion that "[plaintiff's] ability to sit was 'mildly to moderately' impaired . . . provides no support for ALJ's [ ] conclusion that [plaintiff] could perform sedentary work"); see also Burgess v. Astrue, 537 F.3d 117, 127–28 (2d Cir. 2008) (noting that the opinion of a medical expert is not "sufficiently substantial to undermine the opinion of the treating physician," when such an opinion vaguely describes an impairment with words such as "mild" or "moderate") (citing Curry, 209 F.3d at 123).

The Commissioner cites several cases in support of the ALJ's heavy reliance on Dr. Figueroa's opinion, Def.'s Br. at 12, but none are persuasive. In Burnette v. Colvin, 564 F. App'x 605 (2d Cir. 2014) and Lewis v. Colvin, 548 F. App'x 675 (2d Cir. 2013), upon which the

Commissioner both relies, neither the appeals court nor the district court[2] explicitly considered the issue of whether an ALJ can base his or her RFC determination on an opinion that is ambiguous. Hence, these cases may be distinguished from the case at bar. The Commissioner also cites to Pellam v. Astrue, 508 F. App'x 87 (2d Cir. 2013) in which the ALJ adopted many of a consultative examiner's specific findings even though the ALJ "reject[ed]" the examiner's overall opinion, an opinion which the Second Circuit described as "relatively vague." Id. at 89–90. To the extent the case holds that an ALJ may adopt findings from an opinion that the ALJ does not credit, it plainly differs from the instant case where the ALJ credited Dr. Figueroa's opinion. Finally, Zabala v. Astrue, 595 F.3d 402 (2d Cir. 2010), upon which the Commissioner also relies, addresses a different issue altogether, namely whether "the ALJ's determination that Petitioner could perform her previous unskilled work was well supported," id. at 410, and therefore is inapposite.

Because the ALJ should not have concluded that the moderate or mild limitations Dr. Figueroa identified for Plaintiff necessarily permit light work, the Court does not find the ALJ's RFC determination to be supported by substantial evidence. Thus, remand is warranted. See Perozzi v. Berryhill, 287 F. Supp. 3d 471, 489 (S.D.N.Y. 2018) (remanding social security disability case in part because "the ALJ should not have concluded that 'moderate' limitations on sitting necessarily permit sedentary work").

---

[2] The lower-court decisions may both be found under different names, respectively: Burnette v. Astrue, No. 12-CV-6270, 2013 WL 3422447 (W.D.N.Y. July 8, 2013) and Lewis v. Astrue, 11-CV-1163, 2012 WL 6097303 (N.D.N.Y. Dec. 7, 2012).

* * *

The Court concludes that the ALJ erred by improperly discounting Dr. Aranda's opinion and, instead, affording great weight to Dr. Figueroa's vague opinion. Accordingly, the case must be remanded to allow the SSA to accord proper weight to the medical opinions in the record and, with the proper weight assigned, make a new finding as to disability.

V. **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:	September 16, 2019
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge